USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 3, 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------X

TYCO INTERNATIONAL HOLDINGS, S.a.r.l.,

          *Plaintiff*,

    *-against-*

ATKORE INTERNATIONAL GROUP INC.,

          *Defendant*.

--------------------------------------------------------------X

14 Civ. 7968 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Tyco International Holdings, S.a.r.l. ("Tyco") claims that Defendant Atkore International Group, Inc. ("Atkore") has breached its contractual obligation to indemnify Tyco in connection with a series of lawsuits brought against Tyco in Quebec, Canada (the "Ideal Litigation"). Tyco seeks payment for expenses and losses incurred in the Ideal Litigation, as well as a declaratory judgment that Atkore must indemnify Tyco for the Ideal Litigation now and in the future.

Tyco has moved and Atkore has cross-moved for summary judgment. Tyco contends that Atkore has breached its indemnification obligation and owes Tyco indemnity for the expenses and losses Tyco has incurred and will incur in the Ideal Litigation. Atkore argues that it has not breached its contractual obligation to indemnify Tyco because the Ideal Litigation has not triggered its indemnification obligation. Alternatively, Atkore moves for summary judgment that if the Ideal Litigation has triggered its indemnification obligation, it must indemnify Tyco for expenses and losses incurred only to the extent the Ideal Litigation claims arise out of the alleged incompatibility between steel sprinkler pipes coated with certain antimicrobial formulas

and chlorinated polyvinylchloride ("CPVC") pipes or fittings (the "Alleged Antimicrobial Formula/CPVC Incompatibility").

The Court DENIES in part and GRANTS in part both parties' motions. Atkore's indemnification obligation to Tyco has been triggered; and Atkore must indemnify Tyco for expenses and losses incurred as a result of the claims in the Ideal Litigation, but only to the extent the claims arise out of the Alleged Antimicrobial Formula/CPVC Incompatibility.

## BACKGROUND

The material facts of this case are undisputed. Atkore manufactures steel pipes coated with ABF II, an antimicrobial film. Local Rule 56.1 Statement of Undisputed Material Facts in Support of Plaintiff's Motion for Summary Judgment ("Pl. 56.1") ¶ 1. The ABF II-coated pipes are often used with CPVC pipes and fittings, including Tyco CPVC pipes, in fire sprinkler systems. *See id.* ¶ 2; Declaration of Éric Vallières ("Vallières Decl.") ¶¶ 14, 27. Prior to and after 2010, however, Tyco received complaints that ABF II coating was incompatible with CPVC, causing CPVC pipes to leak. Pl. 56.1 ¶ 3; *see* Ex. 3 to the Declaration of Charles Palella ("Palella Decl.").

In 2010, Tyco sold its shares in Atkore pursuant to an investment agreement between Tyco, Tyco's parent company, a third party, and Atkore (the "Agreement"). Palella Decl. Ex. 1 ("Agreement"). In the Agreement, Tyco and Atkore negotiated indemnification provisions that set forth the parties' obligations in the event that, among other things, third parties brought claims alleging the incompatibility of CPVC with Atkore's steel pipes. Pl. 56.1 ¶ 7.

Pursuant to the Agreement, Atkore agreed to indemnify Tyco "against, and to pay and hold the Seller Indemnified Parties harmless from, all (or, in the case solely of the indemnification provided by Section 9.3(c), 85% of) Losses suffered or incurred by any of the

2

Seller Indemnified Parties to the extent arising out of . . . (c) 85% SP Claims." (Agreement

§ 9.3). "85% SP Claims" are "any actual pending or threatened claim or action in respect of

Special Products Claims that include claims arising out of the provision of Special Related

Products or Services by Seller or a Non-Company Affiliate." *Id.* § 12.1. And "Special Products

Claims" are:

> any actual or threatened claim or action brought by any party other than Seller
> which relates to steel sprinkler pipe coated with antimicrobial formulas, such as but
> not limited to ABF II coated pipe, manufactured prior to the Closing by Allied Tube
> & Conduit Corporation and/or other entities comprising part of the Business, to the
> extent such claim or action arises from the alleged incompatibility of such steel
> sprinkler pipe with [CPVC] pipe or fittings.

*Id.* Schedule 12.1(D).[1] "Loss," in turn, is defined as "any and all Liabilities, losses, damages,

expenses (including reasonable expenses of investigation, enforcement and collection and

reasonable attorneys' and accountants' fees and expenses in each case, in connection with any

Proceeding), costs, fines, fees, penalties and obligations, whether or not involving a Third Party

Claim." *Id.* § 12.1.

Atkore has the option to assume, at its own expense, Tyco's defense against third party

claims. *Id.* § 9.6(a). If Atkore chooses not to assume Tyco's defense, however, Atkore is

required to pay for Tyco's defense in accordance with the above indemnification provisions. *Id.*

In the instant action, Tyco asserts that Atkore must indemnify Tyco in connection with

certain lawsuits brought against Tyco in Quebec, Canada. In the early 2000s, Protection

Incendie Ideal ("PII"), a fire suppression system installer, fitted 18 residential developments near

Montreal, Quebec, with hybrid Tyco CPVC and Atkore ABF II steel fire sprinkler systems. *See*

Pl. 56.1 ¶ 4; Vallières Decl. ¶ 27. In November 2008, PII sued Tyco. Pl. 56.1 ¶ 17. PII alleged

failures of the fire sprinkler systems and sought lost profits and damages for the value of repair

---

[1] Allied Tube & Conduit Corporation is a division of Atkore. Def. Opp. & Cross-Mot. at 3 n.3.

work and alleged reputational harm. *Id.* Thereafter, property owners, general contractors, and insurers sued PII, and in some cases PII and Tyco jointly. *Id.* ¶ 18. They claimed that sprinkler components in certain residential sites leaked, and alleged significant damage to property and/or a need for remediation. *Id.* Finally, PII brought Tyco into all of the litigations against it that Tyco was not already a party to. *See id.* ¶ 19. These litigations, filed between 2008 and mid-2010 are referred to as the Ideal Litigation. Local Rule 56.1 Statement of Undisputed Material Facts in Support of Defendant's Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment ("Def. 56.1") ¶ 46.

The parties agree that the Ideal Litigation plaintiffs did not expressly articulate a theory regarding ABF II, until, at the earliest, September 2013. Def. 56.1 ¶ 55. In products liability cases under Quebec law, however, a presumption of defect arises where a product allegedly malfunctions or prematurely deteriorates relative to similar products. *See* Vallières Decl. ¶¶ 15-16 (quoting Civil Code of Quebec, S.Q. 1991, c. 64, a. 1726–30); *see also* Mathias Reimann, *Liability for Defective Products at the Beginning of the Twenty-First Century: Emergence of A Worldwide Standard?*, 51 Am. J. Comp. L. 751, 790 (2003). The manufacturer must rebut the presumption of defect by pointing to the most probable cause of failure. Vallières Decl. ¶¶ 15-17. As a result, in 2010, Tyco retained Neil Wu and Chris Scott to investigate the causes of the leaking pipes concerned in the Ideal Litigation. Pl. 56.1 ¶ 20. Thus, even though the Ideal Litigation plaintiffs had not directly alleged a theory based on ABF II, Tyco asserts that Wu and Scott were compelled, under Quebec law, to determine whether ABF II incompatibility was a possible cause of the alleged failures. *See* Vallières Decl. ¶ 18.

Wu and Scott issued a report on July 31, 2011, attributing the root causes of the leaks to a variety of factors. *See* Palella Decl. Ex. 12 at 1. But the report did not mention ABF II or

incompatibility between antimicrobial coated pipes and CPVC pipes. *See generally id.* In April 2013, PII experts submitted a report identifying certain phthalates as the cause for the pipes cracking, and concluded that "in all likelihood the contaminants originate from the metal pipes used in the fire protection system, that is, components of the system sold by Tyco Fire Products via Extral or Mueller." *See* Palella Decl. Ex. 13 at 9-11.

In September 2013, PII amended its pleadings, explicitly citing a Tyco press release referring to claimed ABF II and CPVC incompatibility. *See* Palella Decl. Ex. 14 ¶ 37; Vallières Decl. ¶ 22. PII claimed that Tyco failed to rebut the presumption of defect against it by not disclosing the information regarding ABF II and CPVC potential incompatibility, and that the omission "prove[d] [Tyco's] intent not to disclose the true causes of the defects found in the products manufactured by it." *See* Palella Decl. Ex. 14. ¶¶ 59, 68. On October 23, 2013, Tyco submitted a supplemental report from Wu and Scott discussing and dismissing ABF II and CPVC incompatibility as a cause for the pipe defects. *See* Palella Decl. Ex. 16.

The Ideal Litigation is still ongoing. Def. 56.1 ¶ 62.

## DISCUSSION

### I.    Legal Standards

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party is entitled to summary judgment "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Under New York law, where parties dispute "the meaning of a contract, the threshold question is whether the contract is ambiguous." *See Lockheed Martin Corp. v. Retail Holdings,*

*N.V.*, 639 F.3d 63, 69 (2d Cir. 2011). Ambiguity is a question of law. *Id.* It "is determined by looking within the four corners of the document, not to outside sources.'" *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009) (quoting *Kass v. Kass*, 91 N.Y.2d 554, 566 (1998)). "Contract language is not ambiguous if it has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Id.* (quoting *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 355 (1978)). In interpreting a contract, "words and phrases should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (internal quotation marks and alteration omitted).

## II. Breach of Contract

There are two issues in contention: (1) was Atkore's agreement to indemnify triggered, and if so, (2) what is the scope of Atkore's indemnification obligation. Tyco argues that the Agreement requires Atkore to indemnify Tyco for actual or threatened claims relating to steel sprinkler pipe coated with antimicrobial formulas "so long as those claims relate[] to alleged incompatibility of Allied steel pipe with CPVC pipes or fittings." Pl. Mot. at 11. According to Tyco, the Ideal Litigation has involved threatened claims relating to the alleged incompatibility of ABF II pipes and CPCV pipes and fittings since PII's initial lawsuit. *See id.* at 16–17; Pl. Reply & Opp. at 4–5. This is so, it argues, because Tyco's experts had to investigate the possibility of ABF II incompatibility due to Tyco's need to rebut the presumption of defect that arises under Quebec law. *See id.* Tyco's position thus is that Atkore must indemnify Tyco for 85 percent of all of its expenses incurred in the Ideal Litigation. *See id.*

6

Atkore disagrees. It argues that its obligation to indemnify is triggered only if there is an allegation of incompatibility between steel sprinkler pipe coated with antimicrobial formulas, such as ABF II, and CPVC pipes or fittings, and that there has been no such allegation of incompatibility in the Ideal Litigation. Def. Opp. & Cross-Mot. at 11-12. Alternatively, Atkore urges that because of the "to the extent" language in Schedule 12.1(D), even if its obligation to indemnify has been triggered, it would only have to pay Tyco's expenses and losses to the extent the claims against Tyco arise from the Alleged Antimicrobial Formula/CPVC Incompatibility. *Id.* at 12–16.

The Court determines that Atkore's indemnification obligation has been triggered. Contrary to Atkore's assertions, there need not be an explicit allegation of ABF II and CPVC incompatibility in an actual or threatened claim or action to trigger Atkore's indemnification obligation. It is enough here that (1) the Ideal Litigation "relates to steel sprinkler pipe coated with antimicrobial formulas," Agreement Schedule 12.1(D), and (2) because of the presumption of defect under Quebec law, the Ideal Litigation encompassed from the outset the possibility (or threat) that the claims arose from the Alleged Antimicrobial Formula/CPVC Incompatibility. Atkore's indemnification obligation was triggered no later than November 2008, when PII filed the first lawsuit against Tyco in Quebec.

Next, the Court agrees with Atkore that the "to the extent" language of Schedule 12.1(D) establishes a limitation on its indemnification obligation. *Id.* Tyco suggests that "to the extent" simply means "so long as" or "where." *See* Pl. Mot. at 2, 11. That reading is contrary, however, to the plain meaning of the phrase. Instead, it is clear that this language establishes the boundaries, or defines the "extent," of Atkore's obligation. Numerous courts have similarly read "to the extent" as establishing a limitation. *See, e.g., Madeira v. Affordable Hous. Found., Inc.,*

315 F. Supp. 2d 504, 508 (S.D.N.Y. 2004) (interpreting "to the extent" language in indemnification provision as limiting indemnification obligation); *Nusbaum v. City of Kansas City*, 100 S.W.3d 101, 106 (Mo. 2003) (en banc) (similar); *United Rentals Highway Techs., Inc. v. Wells Cargo, Inc.*, 289 P.3d 221, 226–27 (Nev. 2012) (similar); *Rowe v. AEG Live LLC*, No. 155902/2012, 2015 WL 986107, at *3 & n.2 (N.Y. Sup. Ct. N.Y. Cnty. Mar. 3, 2015) (similar; applying California law but noting the result would be the same under New York law); *see also John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 109 (1993) ("By reading the words 'to the extent' to mean nothing more than 'if,' the Department has exceeded the scope of available ambiguity."). There is no reason here to redefine or unduly limit the "to the extent" language in the indemnification provisions.

Finally, Tyco argues for a broad interpretation of Atkore's indemnification obligations because, it claims, Atkore's obligations "are similar to those of an insurer's duty to defend an insured." Pl. Reply & Opp. at 7. Thus, according to Tyco, Atkore must indemnify Tyco for the Ideal Litigation because "if any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action." *Id.* (quoting *Fulton Boiler Works, Inc. v. Am. Motorists Ins. Co.*, 06 Civ. 1117 (GTS) (DEP), 2010 WL 1257943, at *6 (N.D.N.Y. Mar. 25, 2010). But Atkore is not in the business of insurance, and besides, Tyco offers no explanation why Atkore should be held to the higher standards of an insurer. New York courts recognize that "[a]n insurer's duty to defend is liberally construed and is broader than the duty to indemnify." *Fieldston Prop. Owners Ass'n, Inc. v. Hermitage Ins. Co.*, 16 N.Y.3d 257, 264 (2011). Because there is no basis to conclude that Atkore agreed to act as an insurer, its "duty to defend is no broader than [its] duty to indemnify." *See Valente v. Dave & Buster's of N.Y., Inc.*, 132 A.D.3d 973, 974 (2d Dep't 2015); *see also Dresser-Rand Co. v. Ingersoll Rand Co.*, 14 Civ.

7222 (KPF), 2015 WL 4254033, at *6–7 (S.D.N.Y. July 14, 2015) ("[A]n indemnitor's obligation to defend must emanate (if at all) from the language of the contract.").

The Agreement sets the limits of Atkore's indemnification obligation. Atkore must indemnify Tyco, but Atkore's indemnification obligation extends only to the portion of the Ideal Litigation claims that arises out of the Alleged Antimicrobial Formula/CPVC Incompatibility.[2]

## III.  Declaratory Judgment

As explained above, it is clear that Atkore is obligated to indemnify Tyco in connection with the Ideal Litigation. Atkore must cover 85 percent of Tyco's expenses and losses incurred as a result of the claims in the Ideal Litigation, but only to the extent the claims arise from the Alleged Antimicrobial Formula/CPVC Incompatibility, now and going forward.

## CONCLUSION

The Court GRANTS in part and DENIES in part the parties' motions for summary judgment. Atkore is obligated to indemnify Tyco for its expenses and losses as set forth above. The Clerk of Court is directed to close the motions at Docket 35 and 37.

Dated: New York, New York  
      August 3, 2017

SO ORDERED

_____  
PAUL A. CROTTY  
United States District Judge

---

[2] Atkore argues that determination of damages must await the resolution of the Ideal Litigation. That is plainly incorrect. If Tyco can prove damages before the resolution of the Ideal Litigation, it is entitled to recover them. *See W. Park Assocs., Inc. v. Everest Nat'l Ins. Co.*, 975 N.Y.S.2d 445, 450 (2d Dep't 2013) (Plaintiff bears the burden of demonstrating damages resulting from breach). The parties also dispute whether it is appropriate to apportion Tyco's expenses in the Ideal Litigation on a theory-by-theory basis. As the summary judgment motions are directed to the issue of whether and to what extent Atkore is liable under the Agreement, and not to the ultimate question of damages, the Court does not decide here whether apportionment is appropriate.